## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

KEVIN E. SNIDER,

    Plaintiff,

v.

WARDEN WEBER,
DIVISION OF CORRECTIONS,
HEAD OF FOOD SERVICE, *WCI*,
SCOTT STEININGER,
*Acting Director (C.F.S.)*,
ASSISTANT WARDEN BUTLER and
PHIL MORGAN, *Commissioner*,

    Defendants.

Civil Action No. TDC-23-1055

### MEMORANDUM OPINION

Self-represented Plaintiff Kevin E. Snider, an inmate confined at Western Correctional Institution ("WCI") in Cumberland, Maryland, has filed this civil rights action pursuant to 42 U.S.C. § 1983. Construed liberally, the presently operative Amended Complaint alleges that Defendants have not honored his dietary requirements and that, as a result, he has been functionally denied food on multiple occasions, in violation of the Eighth Amendment to the United States Constitution. He also alleges retaliation in violation of the First Amendment. Defendants, consisting of the Maryland Department of Public Safety and Correctional Services, Division of Correction ("DPSCS"), Commissioner of Correction J. Philip Morgan, WCI Warden Ronald S. Weber, Assistant Warden Bradley O. Butler, and Acting Director of Correctional Food Services Scott Steininger, have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, which is fully briefed. Having reviewed the submitted materials, the Court finds that

no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED.

## BACKGROUND

Snider, who has been incarcerated since 2016, alleges that he has always been on a special "No Fish Diet." Am. Compl. at 4, ECF No. 11. According to Snider, in August 2022, a physician at another prison updated Snider's records to document his "no fish dietary status." Am. Compl. Ex. 2 at 2, ECF No. 11-2. He asserts that, once he was transferred to WCI in January 2023, he was functionally denied food because he was not given special food trays that complied with his dietary restriction. Overall, Snider alleges that he was denied food on 10 separate dates between January and March 2023. On March 21, 2023, Snider met with the same doctor to make sure that his fish allergy had been included on his paperwork. He was told that it was.

In late March or early April 2023, Snider filed an Administrative Remedy Procedure grievance ("ARP") relating to the failure to provide special diet trays. On April 7, 2023, by which point inmates had been served fish approximately eight more times, Snider was "called to Food Service" to "sign off" on his special diet, which he declined to do. Am. Compl. Ex. 1 at 2, ECF No. 11-1. He alleges that he was then subjected to retaliation in that prison staff took away his ability to order commissary food for three months.

Snider asserts that he has lost 35 pounds as a result of this issue. Although he did not require medical treatment, he has sought psychological treatment for "mental and physical torture." Am. Compl. at 5.

On April 19, 2023, Snider filed the Complaint in the present case. Construed liberally, the presently operative Amended Complaint asserts two claims: (1) a claim of cruel and unusual punishment under the Eighth Amendment to the Constitution based on the failure to provide

2

adequate food; and (2) a retaliation claim under the First Amendment based on the alleged restrictions on his commissary privileges after he filed an ARP about the food issue. He seeks compensatory and punitive damages.

## DISCUSSION

In their Motion, Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6) or, alternatively, summary judgment under Rule 56 on the grounds that (1) under the Eleventh Amendment to the Constitution, they are immune from claims against them in their official capacities; (2) Snider failed to exhaust administrative remedies; (3) Snider has not alleged any personal involvement by Defendants as required to establish liability; (4) Snider has failed to allege sufficient facts to show, and the record does not support the conclusion, that Defendants violated his Eighth Amendment rights or retaliated against him under the First Amendment; and (5) Snider is not entitled to damages.

## I.    Legal Standards

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). While a self-represented party's complaint must be construed liberally, it still "must contain 'enough facts to state a claim for relief that is plausible

3

on its face.'" *Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016) (quoting *King v. Rubenstein*, 825 F.3d 206, 212, 214 (4th Cir. 2016)).

When deciding a motion to dismiss under Rule 12(b)(6), the Court generally considers only the complaint and any attached documents. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Defendants' Motion, however, attaches multiple exhibits. Courts must treat such a motion as a motion for summary judgment when matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements:  (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party must be afforded "a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985).

Here, the notice requirement has been satisfied by the title of the Motion. To show that a reasonable opportunity for discovery has not been provided, the nonmoving party must file an affidavit or declaration under Rule 56(d), or an equivalent filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244–45 (4th Cir. 2002). In opposing the Motion, Snider has not argued that discovery is required. The Court will therefore construe the Motion as a motion for summary judgment for purposes of the arguments requiring consideration of the submitted exhibits.

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the

4

moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with "all justifiable inferences" drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.*

## II.    Eleventh Amendment

Although Snider has not stated whether he is suing Defendants in their official or individual capacities, Defendants argue that because they are employees of the State of Maryland, any claims against them in their official capacities are barred by the Eleventh Amendment. *See* Md. Code Ann., State Gov't § 12-101(a) (LexisNexis 2021) (defining "[s]tate personnel"). The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. In effect, the Eleventh Amendment bars suits for damages against a state in federal court unless the state has waived sovereign immunity or Congress has abrogated its immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). "[A] suit against a state official in

5

his or her official capacity is . . . a suit against the official's office" and thus is the equivalent of "a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Although Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-201(a), it has not waived its immunity to a suit of this kind in federal court. Accordingly, Defendants are immune from lawsuits based on actions taken in their official capacities. Any such claims, as well as the claim against the DPSCS, will be dismissed.

## III.    Exhaustion of Administrative Remedies

Defendants raise the affirmative defense that Snider failed to exhaust administrative remedies. Under the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134 § 803, 110 Stat. 1321 (1996):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Inmates must exhaust administrative remedies before they bring any "suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Exhaustion is mandatory and generally may not be excused unless the administrative procedure is not available. *See Ross v. Blake*, 578 U.S. 632, 642 (2016) (holding that an inmate "must exhaust available remedies, but need not exhaust unavailable ones"). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). In *Ross*, the United States Supreme Court identified three circumstances when an administrative remedy is unavailable. An administrative procedure is not available when officers are consistently

6

unwilling or unable to provide relief to aggrieved inmates, the procedure is so opaque that it is practically incapable of use, or prison administrators actively thwart inmates from filing grievances. *Ross*, 578 U.S. at 643–44.

In Maryland prisons, for the type of grievance asserted by Snider, the Administrative Remedy Procedure ("ARP") is the administrative process that must be exhausted. *See* Md. Code Ann., Corr. Servs. §§ 10-201 to -210 (LexisNexis 2017); Md. Code Regs. § 12.02.28.02(B)(1), (D) (2024) (defining the ARP). First, a prisoner must file a grievance, known as an "ARP," with the warden of the prison within 30 days of the incident or when the prisoner gains knowledge of the injury giving rise to the complaint. Md. Code Regs. § 12.02.28.05(D)(1) (requiring filing with the "managing official"); *id*. § 12.02.28.02(B)(14) (defining "managing official" as "the warden or other individual responsible for the management of a correctional facility"); *id*. § 12.02.28.09(B) (setting the 30-day deadline). Second, if the ARP is denied, a prisoner must file an appeal with the Commissioner of Correction within 30 days. *Id*. § 12.02.28.14(B)(5). If the appeal is denied, the prisoner must appeal within 30 days to the Inmate Grievance Office ("IGO"). *See* Md. Code. Ann., Corr. Servs. §§ 10-206, 10-210; Md. Code Regs. § 12.07.01.05(B). Inmates may seek judicial review of the IGO's final determinations in a Maryland Circuit Court. Md. Code Ann., Corr. Servs. § 10-210(a).

Here, the record reflects that Snider filed two ARPs relating to the denial of food in late March or early April 2023, only weeks before he filed his original Complaint in this case on April 19, 2023. ARP No. WCI-0257-23 was dismissed on April 6, 2023, and ARP No. WCI-0368-23 was dismissed on April 10, 2023 and then appealed to the Commissioner of Correction, who denied the appeal on June 29, 2023. Meanwhile, Snider prematurely filed an appeal of No. WCI-0368-23 with the IGO on or about April 20, 2023. The IGO requested additional documentation in order

7

to complete its review of his appeal, but Snider did not respond by the stated deadline, even after the denial by the Commissioner of Correction. The IGO therefore dismissed the IGO appeal on August 2, 2023 without having addressed the merits.

On April 23, 2023, after he filed the original Complaint in this case, Snider filed ARP No. WCI-0521-23 in which he reiterated his allegations relating to the denial of food and also alleged retaliation. That ARP was dismissed on May 2, 2023. He filed another ARP, No. WCI-0984-23 on or about July 24, 2023, in which he reiterated his prior allegations and made new allegations relating to food service. That ARP was dismissed on July 31, 2023.

Based on this record, the Court will dismiss Snider's claims for failure to exhaust administrative remedies. Although Snider appears to have filed two ARPs relating to this issue in March or April 2023, he had not exhausted the ARP process, including all appeals, before he filed the original Complaint in this case on April 19, 2023. ARP No. WCI-0257-23 was denied by the Assistant Warden on April 6, 2023, and there is no record of an appeal. Rather, Snider apparently submitted the dismissal of ARP No. WCI-0257-23 in support of his appeal of ARP No. WCI-0368-23. ARP No. WCI-0368-23 was not finally dismissed for failure to provide information until August 2023. His final two ARPs were not even filed until after he filed the Complaint in this Court. Because exhaustion must be completed before the Complaint is filed, Snider's Complaint must be dismissed. *See French v. Warden*, 442 F. App'x 845, 846 (4th Cir. 2011) (upholding a dismissal for failure to exhaust administrative remedies because "based on the dates of his initial grievance and the filing of the complaint in this action," the prisoner "could not have completed the grievance process before he filed suit in the district court"); *Jackson v. Dist. of Columbia*, 254 F.3d 262, 268–69 (D.C. Cir. 2001); *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) (holding that based on the "plain language" of the PLRA, a prisoner "may not exhaust administrative

8

remedies during the pendency of the federal suit"); *see also Kitchen v. Ickes*, 116 F. Supp. 3d 613, 624–25 (D. Md. 2015).

Moreover, where the appeal of ARP No. WCI-0368-23, which arguably included an appeal of ARP No. WCI-0257-23, was dismissed by the IGO because Snider did not provide required information, Snider did not fully exhaust available administrative remedies. *See Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001) (stating that an inmate must "pursue the grievance remedy to conclusion"); *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2001) ("An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies."). Finally, Snider has provided no basis to conclude that the administrative process was unavailable to him within the meaning of *Ross.*

Accordingly, the Court finds that Snider failed to exhaust administrative remedies and that his claims therefore must be dismissed.

## IV. Supervisory Liability

Even if the Court could consider Snider's claims on the merits, the claims against Commissioner Morgan, Warden Weber, Assistant Warden Butler, and Acting Director of Correctional Food Services Steininger still fail because Snider has neither alleged sufficient facts nor provided sufficient evidence to show that these defendants are personally liable for the alleged constitutional violations. For claims asserted under 42 U.S.C. § 1983, such as the constitutional claims advanced by Snider, a defendant may not be held liable based on *respondeat superior*, or vicarious liability. *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017). Thus, a defendant's liability under § 1983 generally can be established only if the defendant personally participated in the constitutional violation. *Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018). A defendant

9

who is a supervisor may be held liable if the following conditions for supervisory liability are met: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to individuals like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994) (citations omitted). The record, however, does not show that these individual defendants had any personal involvement in the incidents of failing to provide Snider with special food trays, or in any decisions relating to what meals Snider would receive. Nor does the record show that these defendants made any decisions relating to Snider's commissary privileges. Finally, Snider has not established that these defendants even had knowledge of the alleged incidents of denial of special food trays described in the Amended Complaint prior to their occurrence and nevertheless failed to address the issue. The Court therefore finds that the claims against these individual defendants cannot succeed.

Having concluded that Snider's claims fail for the reasons stated above, the Court need not and will not address Defendants' remaining arguments in their Motion.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss the Amended Complaint or, in the Alternative, for Summary Judgment will be GRANTED. A separate Order shall issue.

Date:  February 28, 2025



THEODORE D. CHUANG
United States District Judge

10